**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

COLIN CABOT AND PAULA CABOT,

*Plaintiffs*,

*-v.-*

JOHN DOES 1-3,

*Defendants*.

Case No. ________________

**COMPLAINT FOR VIOLATIONS OF ERISA AND THE COMPUTER FRAUD AND ABUSE ACT**

**JURY TRIAL REQUESTED**

## I. INTRODUCTION

1. This is an action for injunction and damages for illicit wiretapping and interception of wireless and landline phones, communications, computers, credit and bank accounts, and e-mails belonging to Plaintiffs in clear violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (“CFAA”), the Electronic Communications Privacy Act, 18, U.S.C. §§ 2511. 2520 (“ECPA”); the Stored Communications Act, 18 U.S.C §§ 2701, 2707 (“SCA”); and the common law tort of conversion for damages caused by Defendants’ unauthorized access or damage to Plaintiffs’ protected computer, which includes every computer connected to the internet.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 since Plaintiffs' civil action arises under the laws of the United States -- specifically, 18 U.S.C. § 1030, 18 U.S.C. § 2520 and 18 U.S.C. § 2721.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to claims within its original or exclusive jurisdiction that they form part of the same "case or controversy" under Article III of the United States Constitution.

4. Jurisdiction is proper in the United States District Court, District of New Hampshire, as Plaintiffs reside in New Hampshire, and Defendants have committed tortious acts in New Hampshire. RSA 510:4. Defendants also own bank accounts located in New Hampshire into which they deposited funds unlawfully taken from Plaintiffs.

5. Venue is appropriate in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the transactions that breached Plaintiffs' data took place in New Hampshire, and, as several Defendants reside or may be found in New Hampshire, venue for this action lies in the United States District Court for the District of New Hampshire.

6. Venue is proper in this District pursuant to 28 U.S.C. §139l(a) on the ground that the claims arose in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District

## III. PARTIES

7. Plaintiff Colin Cabot is an individual residing at 7097 Sanborn Road, Loudon, New Hampshire 03307.

8. Plaintiff Paula Cabot is an individual residing at 7097 Sanborn Road, Loudon, New Hampshire 03307.

9. Defendants, John Does 1-3, (hereafter "Defendants") are individuals whose identities are unknown to Plaintiffs with sufficient specificity to name them in a complaint, and who, upon Plaintiffs' knowledge and belief, have engaged in tortious activity in New Hampshire. John Does 1-3 have gained unauthorized access to Plaintiffs' e-mail accounts,

communication devices, computers, cable TV, and credit and bank accounts and have misused the information and in so doing, have caused, and continue to cause, irreparable harm and other damages to Plaintiffs. The Defendants have acted either alone or in concert with one another to commit the illegal acts alleged in this Complaint.

## IV. GENERAL ALLEGATIONS

10. In 2023, Colin and Paula Cabot (the "Cabots") purchased "Dingleton House" on Slade Hill in Cornish, New Hampshire which required substantial renovation.

11. In 2023, the Cabots engaged Jason Gaddis ("Gaddis") as the architectural designer and project manager for the renovations at Dingleton House.

12. The Cabots also agreed to engage a contractor, Global Heritage Group, LLC ("GHG"), operated by Richard Barrow ("Barrow"). GHG provided the Cabots with a fee schedule that was, but local standards, exceedingly high, but the Cabots were anxious to start the project right away, and other contractors were not available.

13. Barrow engaged a number of subcontractors, including Jancewitz Roofing, LLC, operated by Ryan Powers ("Powers"), as the Cabots wished to replace their roof with slate. Powers entered into a written contract with GHG, and GHG was required to make a material deposit of $98,262.12.

14. The project initially entailed a great amount of demolition. It was hoped that GHG would plaster the walls and ceiling, but, after more than a year of excessive billing, where the home was still essentially gutted, in early February 2025, it became apparent that GHG's costs were untenable.

15. Barrow' invoices to the Cabots contained little detail as to what GHG was charging the Cabots. In January 2025, Gaddis asked Barrow to disclose his books to substantiate the

amounts sought from the invoices. Barrow refused.

16. On February 14, 2025, the Cabots, through their project manager, Gaddis, attempted to renegotiate labor rates with Barrow, but the parties were ultimately unable to reach an agreement.

17. On February 15, 2025, Gaddis (jgaddis@gmail.com) requested that Barrow (rbarrow@globalheritagegroup.com) send all outstanding invoices to the Cabots through February 14, 2025, as many were many months in arrears.

18. He informed Barrow that Mr. Cabot (Colin@sanbornmills.org) had mailed a check for Invoice #1084 in the sum of $81,633.96 to Barrow's home address in Connecticut on February 5, 2025, as was typical. The check was issued from Merrimack County Savings Bank, a New Hampshire corporation.

19. On February 16, 2025, Barrow emailed the outstanding invoices. He also attached digital banking details for Wire/ACH transfers. In this email, he advised that he had not agreed to the wage proposals by Gaddis.

20. On February 17, 2025, Gaddis emailed Barrow that Mr. Cabot would wire $86,327.62 for Invoice #1085/36, as Barrow had just provided his wiring details. Gaddis also asked Barrow to revise the invoices that had been submitted, as there were multiple errors and/or omissions contained in them.

21. On February 17, 2025, Barrow, "stressed over the weekend," sent the Cabots "revised" invoices, and explained some of the additional materials not accounted for in the prior invoices.

22. On February 19, 2025, Barrow notified Mr. Cabot and Gaddis that he had received the wire, but not the check for Invoice #1084 in the sum of $81,633.96, but that he would "let you

know when it arrives."

23. Gaddis had requested a quote from Barrow for the plastering work for Dingleton House, which was in GHG's original scope of work. However, Barrow elected not to provide such a quote.

24. On March 4, 2025, Gaddis received an email from a Kelly Gagliuso ("Gagliuso") (kelly@gagliusolegal.com), purporting to be a construction attorney in New Hampshire. Gagliuso had written: "Richard Barrow has asked me for help in responding to your proposal that Global Heritage Group, LLC ("GHG") agree to a reduced scope of work for the Dingleton House. We also need specifics on how and when GHG will be compensated for outstanding invoices and standby costs it has already incurred."

25. On March 5, 2025 at 9:07 a.m., Gaddis received an email from a fake account that was meant to appear like that belonging to Barrow (rbarrow@globalsheritagegroup.com) [Notice the "s" inserted in the middle.] This email, copying both Cabots, stated: "I wanted to inform you that we will now be receiving all payments via ACH transfers only, using our updated bank account. This change was due to an update received from our bank this morning regarding our previous account. I will forward you the updated banking information as soon as I receive it from our accounting department later today, so you can update your records accordingly."

26. On March 5, 2025, the fake Richard also informed the Cabots that GHG will only receive payment by ACH/wire transfer to a "new bank account."

27. Also on March 5, the "*fake*" Barrow email account sent Mr. Cabot an email with an attachment containing the new wiring instructions for the $81,633.96 for Invoice #1084 because, allegedly, the check sent on February 5, 2025 to Barrow's home in Connecticut never arrived. The instructions provided an account number and routing number to a bank account held

by BMO Capital Markets Corp. ("BMO Bank"), which is a foreign corporation registered to do business in the State of New Hampshire, with multiple bank branch locations throughout the state.

28. At 9:27 a.m. on March 5, 2025 Colin Cabot responded to the "*fake*" Barrow account email at 9:07 a.m. Mr. Cabot notifies "Richard" that "I have authorized a wire this morning to *your old bank account*. Hope it makes it to the new one or can still be received by the old one. The wire was for $109,985.88 which represents ½ of what I understand I owe you. . . Please let me know when the funds arrive. If you still haven't received the check mailed last month, I will stop payment and initiate an ACH transfer to your new banking agreement. Please confirm."

29. The Cabots own a bank account held by Morgan Stanley Financial Corporation, which is a foreign corporation registered to do business in the State of New Hampshire, with multiple branch locations throughout the state.

30. At 10:39 a.m. on March 5, 2025, Gagliuso emailed Gaddis confirming that Barrow had received payment from the Cabots in the amount of $109,985.88.

31. At 10:42 on March 5, 2025, the "*fake*" Barrow email account sent the following message: "I can confirm safe receipt of the wire transfer." This email is sandwiched between the February 14, 2025 email, *supra*, and the March 5, 2025 email from Mr. Cabot, *supra*.

32. Mr. Cabot then wired $81,633.96 to the bank pursuant to the new instructions. Mr. Cabot sent an email to the "*fake*" Barrow email account at 3:02 p.m. notifying that the wire had been sent, and, on March 6, 2025, the "*fake*" Barrow email account confirmed receipt.

33. On March 6, 2025 at 1:36 p.m. (even though wire payment may have gone to a "fake account"), Kelly Gagliuso emailed Gaddis that "I am writing on Richard's behalf to acknowledge his receipt of a check from the Cabots *this morning* in the amount of $81,633.95. Thank you very much. To date, GHG confirms receipt of $191,619.83 for invoices totaling

$299,866.96. This leaves an outstanding balance of $208,247.13." [Emphasis added.]

34. That day, on March 6, 2025 at 2:29 p.m., Mr. Gaddis notified Gagliuso and Barrow that "with considerable disappointment, the services of Richard Barrow & GHG at Dingleton are no longer required."

35. Shortly thereafter, on March 6, 2025, Gaddis informed Mr. Powers (rdpowers@roofsplus.co) that GHG was terminated and asked if Jancewitz wanted to remain on the job with the Cabots taking over the contract.

36. Following Gagliuso email, on March 6, 2025, 4:52 p.m., the "*fake*" Barrow email account advised Mr. Cabot that "I'm following up on Kelly's email below. The check has been received and will be torn up as the wire transfer has also been received. The outstanding balance of $208,247.13 should be processed via wire transfer to our BMO bank account."

37. To this, on March 7, 2025 at 7:27 a.m., Mr. Cabot responded, "I noticed that the $81,633.95 check Richard assured us would be torn up *has cleared my bank*." This is particularly odd because Gagliuso had just advised that Barrow had received the check "this morning" and it is unlikely that a check in the amount $81,633.96 would clear the bank in less than 24 hours.

38. On March 7, 2025, the domains (rbarrow@globalsheritagegroup.com) and ("kelly@gagliusolesgal.com) were created.

39. On March 10, 2025, an account intended to imitate that belonging to Gagliuso "kelly@gagliusolesgal.com (note the "s" in "legal") responded to Mr. Cabot's March 7 email inquiring as to why the check had not been torn up as promised. This "*fake*" Gagliuso account advised that "the check was deposited by the accounting department without his consent. Richard suggested that we deduct $81,633.95 from the $208,247.13, leaving a balance of $126,613.18 to be processed via wire transfer to our BMO account."

40. As discussed above, GHG had subcontracted with Ryan Powers of Jancewitz Roofing, and GHG had provided a material deposit in the amount of $98,262.12. Barrow wanted these funds returned to him.

41. However, until this point, none of the parties had discussed through email communication how this deposit would be returned to Barrow.

42. On March 12, 2025, a fake account imitating that belonging to Ryan Powers (rdpowers@rooflsplus.com) (with an "l") sent an email to Mr. Cabot informing him that he was awaiting Mr. Cabot's payment of the material deposit [in the amount of $98,262.12] to our "TD Bank account" and sent wiring instructions.

43. This "*fake*" Powers email account then contacted Mr. Cabot twice, at which point, Gaddis became suspicious and called Powers, who indicated that he had not sent any of those emails or requests. Ultimately, Mr. Cabot and Powers spoke by phone and the correct wiring information was transmitted and the wiring was completed correctly.

44. Because of the interception of the oral, wire and electronic communications by John Does 1-3, Plaintiffs have been terrorized to the point that they have been rendered unable to use any technology connected to the Internet, and have been forced to close multiple credit accounts, e-mail accounts, bank accounts, and have been forced to replace and/or disconnect the use of multiple computers, printers and telephones.

45. Worse, John Does 1-3, have hacked into the Cabots' e-mail and Internet accounts and have manipulated the communications to make it appear that they were communicating with Barrow, Gagliuso, and Powers. John Does 1-3 have accomplished this by pretending to be Barrow, Gagliuso, and Powers through Internet Protocol of "IP Spoofing."

46. Internet Protocol ("IP") addresses are unique numeric addresses used by computers on the Internet that allow Internet sites to route traffic from the source to the destination. The assignment of IP addresses is controlled by Internet Service Providers ("ISPs"). There are two types of IP addresses: dynamic, which differ each time the user accesses the ISP, and static, which function as a permanent IP address. Most individuals use ISP's that have dynamic IP addresses.

47. Through IP Spoofing, computer hackers gain unauthorized access to Internet accounts and send e-mails made to appear as having come from a trusted contact. John Does 1-3 have fraudulently made it appear that they were Barrow, Gagliuso, and Powers to fool the Cabots into wiring money into bank accounts owned or accessed by the Does.

48. The Cabots have never recovered the $81,633.96 wired to the BMO account as instructed by the "*fake*" Barrow email on March 6, 2025.

49. These unknown Defendant computer hackers[1] have engaged in an anonymous incessant campaign of fraud, have intentionally accessed Plaintiffs' protected computers, without authorization or by exceeding authorized access, and obtained information from a protected computer.

50. Defendants have knowingly and with intent to defraud accessed one or more protected computers belonging to Plaintiffs without authorization or by exceeding authorized access, to obtain something of value or further a fraud.

51. Defendants have knowingly, intentionally, and without authorization caused the transmission of a program, information, code, or command to a protected computer, and caused

[1] A "hacker" is someone who is able to subvert computer security; if doing so for malicious purposes, as here, the person can also be called a cracker.

Plaintiffs damage.

52. Defendants have intentionally accessed a protected computer without authorization and, as a result of such conduct, recklessly causing Plaintiffs damage and loss.

53. Plaintiffs have suffered at least $81,633.96 in damage or loss by reason Defendants' unlawful actions.

**COUNT I**

**UNAUTHORIZED ACCESS IN VIOLATIONS OF 18 U.S.C. §1030; FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS**

54. Plaintiffs incorporate by reference the preceding paragraphs of this complaint and further alleges:

55. The Computer Fraud and Abuse Act (18 U.S.C. § 1030) ("CFAA") imposes civil liability for unauthorized access or damage to a protected computer, which includes every computer connected to the internet. This statute also makes it illegal even to conspire or attempt to commit hacking, even if attempts to access were not successful. *Id*.

56. Section 1030(a)(2)(C) of CFAA prohibits any person from intentionally accessing a protected computer, without authorization or by exceeding authorized access, and obtaining information from a protected computer.

57. Section 1030(a)(4) of CFAA prohibits any person from knowingly and with intent to defraud accessing a protected computer, without authorization or by exceeding authorized access, to obtain anything of value or further a fraud.

58. Section 1030(a)(5)(A) of CFAA prohibits any person from knowingly, intentionally, and without authorization causing the transmission of a program, information, code, or command to a protected computer, and causing damage.

59. Sections 1030(a)(5)(B) and 1030(a)(5)(C) of CFAA which prohibit any person

from intentionally accessing a protected computer without authorization and, as a result of such conduct, recklessly causing damage and loss.

60. Any person who suffers damage or loss by reason of a violation of 18 U.S.C. § 1030(a) may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. 18 U.S.C. §§ 1030(c)(4)(A)(i) and 1030 (f).

61. Plaintiffs own and maintain one or more "protected computers" as the term is defined in the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2)(B), through which e-mail transmissions are received, stored and disseminated in interstate and/or foreign commerce or communication.

62. Defendants, John Does 1-3, knowingly, and with the intent to defraud, accessed Plaintiffs' private and protected computers, without authorization, to further the intended fraud and to obtain things of value in violation of 18 U.S.C. § 1030(a)(4).

63. Defendants knowingly and intentionally caused the transmission of a program, information, code or command and as a result of such conduct intentionally caused damage to protected and private computers in violation of 18 U.S.C. § 1030(a)(5)(A).

64. Defendants knowingly and intentionally accessed Plaintiffs' private and protected computers without authorization, thereby obtaining information by interstate communication to which they were not entitled, and as a result of such conduct, recklessly caused damage in violation of 18 U.S.C. § 1030(a)(5)(B).

65. Defendants knowingly and with intent to defraud, trafficked in Plaintiffs' passwords and account information through which Plaintiffs' private computers have been accessed, affecting interstate commerce. 18 U.S.C. § 1030(a)(6)(A).

66. By accessing Plaintiffs' protected computers, Defendants have caused

Plaintiffs loss and damage aggregating in excess of Eighty-One Thousand Six Hundred Thirty-Three Dollars and Ninety-Six Cents ($81,633.96).

67. Defendants threaten to continue to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to Plaintiffs.

68. Plaintiffs are entitled to such equitable or remedial relief as the Court may deem appropriate, including ordering Defendants to cease all efforts or activity to access Plaintiffs' personal devices connected to the internet without authorization.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary and permanent injunctive relief against Defendants John Does 1 - 3, and award actual damages, the reasonable costs incurred in bringing this action together with attorney's fees, and prejudgment interest, and for such further relief as the Court may deem just and proper.

**COUNT II**

**VIOLATIONS OF 18 U.S.C. § 2520;**
**THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**

69. Plaintiffs incorporate by reference the preceding paragraphs of this complaint and further alleges:

70. This is an action for a violations of 18 U.S.C. § 2511 and 18 U.S.C. § 2520; Wire and Electronic Communications Interception and Interception of Oral Communications.

71. John Does 1 - 3 have intercepted, disclosed and intentionally used the wire, oral and electronic communications of Plaintiffs in violation of 18 U.S.C. § 2511.

72. Defendants through their assaults of Plaintiffs' protected computers, cellular telephones, telephone landline, bank, credit and mailing accounts, have obtained confidential

communications.

73. The illicit access, capture and use of the contents of those e-mails, oral and electronic communications and credit accounts, constitute an interception and intentional disclosure within the meaning of 18 U.S.C. § 2511.

74. As a result of Defendants' intentional interception, disclosure and use of Plaintiffs'' oral, wire and electronic communications, Plaintiffs have suffered and continue to suffer damages.

75. Defendants threaten to continue to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to Plaintiffs.

76. Plaintiffs seek pursuant to 18 U.S.C. § 2520(b) seek:

a. Preliminary and other equitable relief;

b. Actual damages;

c. Punitive damages;

d. Reasonable attorney's fees; and

e. other litigation costs reasonably incurred.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that preliminary and permanent injunctive relief be granted against Defendants John Does 1 - 3, as well as actual damages, punitive damages, reasonable costs incurred to bring this action together with attorneys' fees, prejudgment interest, and for such further relief as the Court may deem just and proper.

**COUNT III**

**VIOLATIONS OF 18 U.S.C. § 2701;
THE STORED COMMUNICATIONS ACT**

77. Plaintiffs incorporate by reference the preceding paragraphs of this complaint and further alleges:

78. This is an action for violations of 18 U.S.C. § 2701 and 18 U.S.C. § 2707; Stored Wire and Electronic Communications and Transactional Records Access.

79. Among the e-mail communications retained in electronic storage by Plaintiffs were private e-mails sent and received by the Plaintiffs, not intended for public disclosure, which Defendants did not have consent to access.

80. Defendants intentionally accessed, without authorization, the e-mail server through which Plaintiffs' electronic communication services are provided.

81. By intentionally accessing the e-mail server and computer, through which Plaintiffs sent and received e-mails, without authorization, Defendants intercepted and obtained copies of electronic communications while they were in electronic storage, in violation of 18 U.S.C. § 270l(a)(l).

82. Plaintiffs have suffered damages which were actually and proximately caused by Defendants' intentional violation of 18 U.S.C. § 2701.

83. Defendants threaten to continue to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to Plaintiffs.

84. Pursuant to 18 U.S.C. § 2707, Plaintiffs seek Preliminary and equitable relief

a. Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

b. Punitive damages; and

c. Reasonable attorney's fees and other litigation costs reasonably incurred.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that preliminary and permanent injunctive relief be granted against Defendants John Does 1 through 3, as well as reasonable costs incurred to bring this action together with attorneys' fees, and prejudgment interest and for such further relief as the Court may deem just.

**COUNT IV**

**CONVERSION**

85. Plaintiffs incorporate by reference the preceding paragraphs of this complaint and further alleges:

86. This is an action for conversion.

87. Without valid authorization, Defendants intentionally obtained access to Plaintiffs' credit and bank accounts, protected computers, telephones and confidential electronic communications.

88. Based upon the foregoing allegations, Plaintiffs have suffered damages which were actually and proximately caused by Defendants' conversion of Plaintiffs property.

89. Defendants threaten to continue to engage in the unlawful actions alleged herein, and unless restrained and enjoined, will continue to do so, causing irreparable harm to Plaintiffs.

90. Defendants have also suffered actual damages.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that preliminary and permanent injunctive relief be granted against Defendants John Does 1-3 as well as costs incurred to bring this action together with actual damages, attorney's fees, and for

such further relief as the Court may deem just and proper.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

A. Upon trial, direct that judgment be entered in favor of the Plaintiffs and against the Defendants on all counts of the within Complaint for all compensatory, consequential, incidental and enhanced damages;

B. Award the Plaintiffs prejudgment interest to the date of judgment;

C. Preliminarily enjoin Defendants from accessing or attempting to access, or conspiring to access Plaintiffs' personal devises connected to the internet, including computers, laptops, tablets, telephones, or any other device that accesses the internet, and order Defendants to cease immediately any and all activity to access personal emails, text messages, photographs, and other documents and communications stored on personal devises connected to the internet;

D. Permanently enjoin Defendants from violating the provisions of the Computer Fraud and Abuse Act (18 U.S.C. § 1030);

E. Preliminarily and permanently enjoin Defendants from violating the provisions of 18 U.S.C. § 2511 and 18 U.S.C. § 2520;

F. Preliminarily and permanently enjoin Defendants from violating the provisions of 18 U.S.C. § 2701 and 18 U.S.C. § 2707;

G. Award the Plaintiffs their reasonable attorney's fees, litigation expenses, interest and costs; and

H. Grant such other and further relief as may be appropriate.

Respectfully Submitted,

COLIN CABOT AND PAULA CABOT,

By their Attorneys

COLEMYERS, PLLC

Date: April 8, 2025 By: /s/ Carolyn Cole

Carolyn Cole, Esq. NH Bar #14549
18 Bank Street
Lebanon, NH 03766
603-448-6300
ccole@colemyers.law